UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDDIE WILSON DOZIER,

                                    Plaintiff,

v.                                                              5:11-CV-00740
                                                                (TWD)
CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY,[1]

                                    Defendant.

_____

APPEARANCES:                                        OF COUNSEL:

EDDIE WILSON DOZIER
Plaintiff *pro se*
205 Westcott Street, Apt. #8
Syracuse, NY 13210

HON. RICHARD S. HARTUNIAN, ESQ.          VERNON NORWOOD, ESQ.
United States Attorney for the                   Special Assistant U.S. Attorney
        Northern District of New York
Counsel for Defendant                            MARY ANN SLOAN, ESQ.
P.O. Box 7198                                    Acting Chief Counsel, S.S.A.
100 S. Clinton Street                            Region II
Syracuse, New York 13261-7198

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## MEMORANDUM DECISION AND ORDER[2]

        This case has proceeded in accordance with General Order 18 of this Court, which sets

_____

        [1]    The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of
Social Security, for Defendant Michael J. Astrue and amend the caption accordingly.  *See* Federal
Rule of Civil Procedure 25(d).

        [2]    This matter is before the Court by consent of both parties.  (Dkt. No. 14.)  It was
originally assigned to the Hon. George H. Lowe, but upon his retirement was reassigned to the
undersigned.  (Dkt. No. 16.)

forth the procedures to be followed when appealing a denial of Social Security benefits. *Pro se* Plaintiff did not file a brief, but was given opportunities to do so. (Dkt. No. 15; Text Order 5/22/12.) Defendant filed and properly served a brief. (Dkt. No. 17.) Oral argument was not heard. For the reasons discussed below, the Commissioner's decision is affirmed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is 36 years old with a date of birth of May 16, 1976. (T at 6.[3]) He testified at a hearing on March 17, 2010, that he completed the 10th grade and did not obtain his GED. *Id.* at 24. On June 4, 2009, he told treatment providers at St. Joseph's Hospital Health Center that he recently passed his GED test. *Id.* at 254, 258. His past jobs included warehouseman and production line worker. *Id.* at 113. He also had training in construction work. *Id.* at 25. He testified he stopped work because of his back. *Id.* at 26. He also indicated he "got laid off." *Id.* at 112. He alleges disability due to arthritis in his hands and knees, lung and back problems. *Id.*

Plaintiff applied for disability insurance benefits and Supplemental Security Income on November 3, 2008. *Id.* at 79. The application was denied on January 28, 2009. *Id.* at 48. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 54. The hearing was held on March 17, 2010. *Id.* at 21. On May 19, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.* at 11. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 16, 2011. *Id.* at 1. Plaintiff commenced this action on June 28, 2011. (Dkt. No. 1.)

---

[3]     Citations identified as "T" reference the Administrative Transcript (Dkt. Nos. 11-2 through 11-8) and the pages set forth in that document.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2012). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2012).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a) (2011), 1383(d)(1) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§

3

404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Kohler,* 546 F.3d at 265.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2011); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel Williams. v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp.2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2013. (T. at 13.)

2.    The claimant has not engaged in substantial gainful activity since October 25, 2008, the alleged onset date of disability.  *Id.*

3.    The claimant has the following medically determinable impairments: lumbar strain, controlled hypertension, and unspecified alcohol dependence.  *Id.*

4.    The claimant did not have an impairment or combination of impairments that significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant is not disabled because he does not have a severe impairment or combination of impairments.  *Id.*

## IV.    THE PARTIES' CONTENTIONS

As noted above, the Plaintiff did not file a brief.  Defendant contends that:

1.    The Plaintiff failed to demonstrate a severe impairment.  (Dkt. No. 17 at 10-13.[4])

2.    The ALJ properly assessed Plaintiff's credibility.  *Id* at 13-15.

3.    Plaintiff was not prejudiced by his lack of representation.  *Id.* at 15-16.

Defendant thus contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and should be affirmed.  (Dkt. No. 17.)

## V.    THE RECORD

### A.    Testimonial and Non-Medical Evidence

At the outset of the hearing, the ALJ advised Plaintiff of his right to representation and confirmed that Plaintiff had received notification from the Commissioner explaining his right to representation. (T. at 23-24.)  Nonetheless, Plaintiff told the ALJ that he wished to proceed without a representative.  *Id.*

Plaintiff testified that he stopped working due to lower back pain that limited his ability

---

[4]    Page numbers in citations to the Defendant's brief refer to the actual page numbers of that documents rather than the page number assigned by the Court's electronic filing system.

to work on his feet.  *Id.* at 26, 37.  He also claimed that he was unable to work due to occasional nervous breakdowns.  *Id.* at 27.  Plaintiff acknowledged that after his last job ended in October 2008, he received unemployment insurance benefits until they elapsed.  *Id.* at 29.  Plaintiff testified that he could lift twenty-five pounds, had no difficulty sitting, could stand for one hour at a time, and walk for forty minutes at a time.  *Id.* at 37-39.  He acknowledged that he could drive a car as well as travel by cab or bus.  *Id.* at 39.  His hobbies included swimming.  *Id.*

As part of Plaintiff's disability application, he completed an activities of daily living questionnaire.  *Id.* at 119-126.  Plaintiff stated that he helped take care of his mother and his six kids.  *Id.* at 120.  He took care of his own personal hygiene and grooming needs; prepared meals; housecleaned; did household repairs; read; watched television; went out for daily walks; drove a car; independently traveled by public transportation; attended appointments; shopped for gas and groceries; played sports; socialized with family and friends; and attended football games as well as the Boys & Girls Club.  *Id.* at 119-124.  He could walk for three miles at a time.  *Id.* at 125.  Plaintiff had no difficulty paying attention, finishing what he started, following instructions, and getting along with bosses or others in authority.  *Id.*  He claimed that he occasionally had trouble remembering things.  *Id.* at 126.

**B**.      **Summary of the Relevant Medical Evidence**

Plaintiff was treated for a right hand laceration at the St. Joseph's Hospital Health Center ("SJHHC") emergency room on April 8, 2007.  *Id.* at 240-242.  An attending physician observed that the tendons and ligaments in his right hand were functioning normally.  *Id.* at 241.  Right hand x-rays revealed no fracture, a normal alignment, and no foreign body.  *Id.* at 241, 242.  The attending physician cleaned and stitched Plaintiff's wound and discharged him home.  *Id.* at 241.

An x-ray of Plaintiff's chest, taken on April 15, 2007, was unremarkable. *Id.* at 245. The x-ray showed clear lungs with a normal silhouette and no effusions. *Id.*

Dr. Thomas Osborne, an internist, examined Plaintiff for complaints of lower back pain in July 2008. *Id.* at 195-207. X-rays of Plaintiff's lumbar spine, taken on July 23, 2008, were negative. *Id.* at 201. Dr. Osborne assessed Plaintiff with a lumbosacral strain. *Id.* at 204, 206.

Dr. Dennis Noia, a consultative psychologist, examined Plaintiff on January 9, 2009, and opined that Plaintiff had no significant psychiatric problems. *Id.* at 211. Dr. Noia assessed that Plaintiff could understand and follow simple directions and instructions; perform simple tasks and some complex tasks, independently and with supervision; maintain attention and concentration for tasks; regularly attend to a routine and maintain a schedule; learn new tasks; make appropriate decisions; relate to and interact appropriately with others; and deal with stress. *Id.* at 210-211. Plaintiff told Dr. Noia that he was a warehouse worker for 2.5 years until November 2008 when he left due to transportation problems. *Id.* at 208.

On examination, Dr. Noia observed that Plaintiff's manner of relating, social skills, and overall presentation were adequate. *Id.* at 209. Plaintiff's receptive and expressive language skills were adequate. *Id.* at 210. His thought processes were coherent and goal directed with no delusions, hallucinations, or disordered thinking. *Id.* Plaintiff's mood was calm and he appeared relaxed and comfortable; his affect was congruent with his thoughts and speech. *Id.* Plaintiff's sensorium was clear and he was fully oriented. *Id.* His attention and concentration skills were intact, his recent and remote memory skills were intact, and his intellectual functioning was within the average range. *Id.* Plaintiff's general fund of information was appropriate to experience; his insight and judgment were good. *Id.*

Regarding his activities of daily living, Plaintiff told Dr. Noia that he cooked and prepared food, did general cleaning, did laundry, shopped, managed money, drove, and used public transportation. *Id.* Plaintiff reported that he got along well with family and friends. *Id.* Dr. Noia concluded that no psychiatric recommendations were warranted as Plaintiff did not have any significant psychiatric problems. *Id.* at 211.

Dr. Kalyani Ganesh, a consultative physician, also examined Plaintiff on January 9, 2009, and assessed no limitations in sitting, standing, walking, and/or using his upper extremities. *Id.* at 214. Plaintiff told Dr. Ganesh that he worked on a screw machine until November 2008 when he left due to transportation problems. *Id.* at 212. He reported a medical history that consisted of a broken bone in his right hand ten years prior; a puncture wound to his lower back; a punctured lung, five to ten years prior; and a neck injury four years prior. *Id.* Plaintiff complained of back, hand, leg, and neck problems. *Id.* He reported that he was not seeing a physician for any of those problems. *Id.* Plaintiff stated that he was unable to work due to chronic lower back pain for the last ten years. *Id.*

Upon examination, Dr. Ganesh observed that Plaintiff's gait and stance were normal. *Id.* at 213. Plaintiff demonstrated full muscle strength and a full range of motion as well as normal reflexes and sensations throughout his arms and legs. *Id.* at 214. His squat was full; he was able to walk on his heels and toes; and he had no difficulty changing for the examination, getting on and off of the examination table, and rising from a seated position. *Id.* at 213. His lungs were clear to auscultation and his respiratory rate was 18/minute. *Id.* His lumbar and cervical spine each exhibited a full range of motion; and straight leg raising tests were negative. *Id.* at 214. Plaintiff's dexterity in his hands and fingers was intact; and his grip strength was full. *Id.* Dr.

Ganesh diagnosed a history of lower back pain, right hand injury, and neck injury. *Id.*

Dr. T. Harding, a State agency psychological consultant, reviewed the evidence of record in January 2009 and assessed that Plaintiff did not have a severe mental impairment. *Id.* at 217.

Plaintiff reported to the SJHHC's mental health clinic on June 4, 2009, seeking medication for depression and anxiety. *Id.* at 252. He complained of depression and racing thoughts for the past year. *Id.* at 254. Plaintiff reported that he was doing well a couple of weeks ago when he passed his GED test. *Id.* He denied any history of psychiatric treatment and/or substance abuse treatment. *Id.* Plaintiff reported that he began drinking at age fourteen and continues to drink at least four beers a day. *Id.* at 258. He denied ever using drugs, but the physician noted that Plaintiff's records indicated regular use of marijuana as well as a felony conviction for possession of crack cocaine with intent to sell. *Id.* He went to jail in the eleventh-grade for the felony conviction and did not graduate high school. *Id.* He also had a history of DUIs (driving under the influence). *Id.*

Upon mental status examination, Dr.Bruce Kahn, an attending psychiatrist, observed that Plaintiff was generally pleasant, affable, and engaging but was not forthcoming about his criminal history or drug use. *Id.* at 259. Plaintiff was fully oriented and his psychomotor activities were normal. *Id.* Plaintiff's speech was appropriately conversant. *Id.* His mood was tense and occasionally worried. *Id.* Plaintiff's affect was euthymic without lability, expansiveness, inappropriateness, restriction, or constriction. *Id.* His thought processes were linear, logical, well-organized, and future-oriented. *Id.* He denied hallucinations and/or delusions. *Id.* Plaintiff had no suicidal/homicidal ideation. *Id.* His insight was fair and his judgment was good. *Id.* Dr. Kahn assessed a history of drug and alcohol use; ongoing and daily

alcohol consumption; a history of criminal conduct and a current lack of complete honesty about his criminal and drug history. *Id.* On the DSM-IV multiaxial scale,[5] Dr. Kahn assessed "other and unspecified alcohol dependence, continuous" on Axis I; and a global assessment of functioning (GAF)[6] score of sixty on Axis V. *Id.* Plaintiff was discharged that day with instructions to call for a follow up outpatient appointment. *Id.* at 251. Plaintiff testified he did not follow up due to transportation and having problems with his girlfriend. *Id.* at 28.

Plaintiff's only other psychiatric treatment occurred on April 27, 2006, when he was admitted overnight to SJHHC's Comprehensive Psychiatric Emergency Program for an episode of psychosis. *Id.* at 173, 187. He was discharged on medication and told to follow up with a clinic. *Id.* at 191. He returned to work without problems after the 2006 treatment. *Id.* at 28.

## VI.    DISCUSSION

### A.    Plaintiff's Failure to File Papers in Response to Defendant's Motion for Judgment on the Pleadings

This Court's General Order 18 sets forth the briefing schedule in Social Security cases. After Plaintiff failed to comply with General Order 18, the now retired Magistrate Judge George H. Lowe issued an order of December 29, 2011, which directed Plaintiff to file his brief within

---

[5]    The DSM-IV multiaxial scale assesses an individual's mental and physical condition on five axes, each of which refers to a different class of information. Axis I refers to clinical disorders; Axis II refers to personality disorders; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V cites the individual's global assessment of functioning. *Diagnostic and Statistical Manual of Mental Disorders-IV-TR*, 27 (4th ed. 2000).

[6]    A GAF of 51 to 60 signifies some moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders-IV-TR*, 27 (4th ed. 2000).

45 days after service of Defendant's brief. (Dkt. No. 15.) Based upon the February 23, 2012, filing date of Defendant's brief, Plaintiff's brief became due on April 9, 2012. *See* Dkt. No. 17. When Plaintiff failed to timely file his brief, the undersigned granted a further extension to him to file his brief by June 22, 2012. *See* Text Order 5/22/12. Despite this, Plaintiff filed neither papers opposing Defendant's motion nor a request to enlarge the time within which to oppose Defendant's motion.

In the usual civil case, a plaintiff's failure to comply with court orders would subject the complaint to dismissal under Federal Rule of Civil Procedure 41(b). In addition, other Districts in the Second Circuit have held that where a Social Security plaintiff files a complaint but fails to file a brief on the merits, the complaint is conclusory and insufficient to defeat a motion for judgment on the pleadings. *Winegard v. Barnhart,* No. 02-CV-6231 (CJS), 2006 WL 1455479, at *9-10, 2006 U.S. Dist. LEXIS 31973, at *28-29 (W.D.N.Y. Apr. 5, 2006); *Feliciano v. Barnhart*, Civ. No. 04-9554 (KMW/AJP), 2005 WL 1693835, at *10, 2005 U.S. Dist. LEXIS 14578, at *36 (S.D.N.Y. July 21, 2005); *Reyes v. Barnhart*, Civ. No. 01-4059 (LTS/JCF), 2004 WL 439495, at *3, 2004 U.S. Dist. LEXIS 3689, at *6-7 (S.D.N.Y. Mar. 9, 2004).

In this District, however, General Order No. 18 mandates a different course in Social Security cases. General Order 18 contains the following "Notification of the Consequences of Failing to File a Brief . . . : Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal."

(General Order No. 18 at 4.)  General Order 18 thus states that the Court will "consider" the case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts."  *Id.*  In a case such as this, where Plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants.  Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence.

> **B.** **The ALJ's Finding That Plaintiff Was Not Engaged in Substantial Gainful Activity Is Supported By Substantial Evidence**

The first step of the evaluation is to determine whether Plaintiff was engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Substantial gainful activity is defined as work that "involves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit."  *Id.* at §§ 404.1510, 404.1572, 416.910, 416.972.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (T. at 13.)  Defendant does not dispute this finding.  (Dkt. No. 17.)

> **C**. **Plaintiff Does Not Have a Severe Impairment**

At the second step of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921.  "Basic work activities" are defined as "the abilities and

aptitudes necessary to do most jobs." *Id.* at §§ 404.1521(b), 416.921. These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id.*; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, at *11, 2005 U.S. Dist. LEXIS 32330, at *36 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).

Based upon the medical evidence, the ALJ concluded that Plaintiff did not "[h]ave an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments." (T. at 13.) For the reasons set forth below, the Court agrees with the ALJ.

The ALJ properly determined that Plaintiff's impairments were non-severe since they did not significantly limit his ability to perform basic work activities. *Id.* at 18-22.; *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (non-severe impairments are those impairments which do not significantly limit a person's physical or mental ability to do basic work activities). The ALJ's determination was based on evidence from Dr. Ganesh, Dr. Noia, and Dr. Harding as well as Plaintiff's statements.

Dr. Ganesh, a consultative physician, observed that Plaintiff's gait and stance were normal. *Id.* at 213. Plaintiff demonstrated full muscle strength and a full range of motion as well as normal reflexes and sensations throughout his arms and legs. *Id.* at 214. Plaintiff's squat was full, his lungs were clear to auscultation, his respiratory rate was within normal limits. *Id.* at 213.

14

His lumbar and cervical spine each exhibited a full range of motion; straight leg raising tests were negative; his hand and finger dexterity was intact; and his grip strength was full. *Id.* at 214. Dr. Ganesh assessed that Plaintiff had no limitations in sitting, standing, walking, and/or using his upper extremities due to an impairment. *Id.*

It is well established that a consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (*citing Miles v. Harris*, 644 F.2d 122, 124 (2d Cir. 1981)). Moreover, Dr. Thomas Osborne, a treating physician who provided care to Plaintiff, examined him on two dates for complaints of lower back pain in July 2008. *Id.* at 195-207. X-rays of Plaintiff's lumbar spine, taken on July 23, 2008, were negative. *Id.* at 201. Dr. Osborne assessed Plaintiff had a lumbosacral strain, prescribed a nonsteroidal anti-inflammatory medication, and did not find any physical limitations. *Id.* at 204, 206.

Moreover, Plaintiff testified that he could lift twenty-five pounds, had no difficulty sitting, and could stand for one hour at a time. *Id.* at 37-38. He acknowledged that he could drive a car, travel by public transportation, and walk for three miles at a time. *Id.* at 39, 125. Thus, Plaintiff failed to demonstrate any severe exertional impairment.

Concerning Plaintiff's mental status, the test for determining whether a mental impairment significantly limits an individual's ability to perform basic work activities hinges upon an assessment of its impact on factors such as the ability to understand, carry out, and remember instructions, as well as the ability to respond appropriately to supervisors, co-workers, and work stresses in a normal work setting. 20 C.F.R. §§ 404.1545(c), 416.945(c); SSR 96-9p. In this regard, Dr. Noia, a consultative psychologist, assessed that Plaintiff could understand and

follow simple directions and instructions; perform simple tasks and some complex tasks, independently and with supervision; maintain attention and concentration for tasks; regularly attend to a routine and maintain a schedule; learn new tasks; make appropriate decisions; relate to and interact appropriately with others; and deal with stress. (T. at 210-11.) Dr. Noia opined that Plaintiff had no significant psychiatric problems. *Id.* at 211.

Similarly, Dr. Harding, a State agency psychological consultant, assessed that Plaintiff did not have a severe mental impairment. *Id.* at 217. State agency psychological consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions. 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6); *see* SSR 96-6p (State agency psychological consultants make findings of fact on psychiatric issues including, but not limited to the existence of the severity of an individual's impairments).

Moreover, Plaintiff acknowledged that he had no difficulty paying attention, finishing what he started, following instructions, and getting along with bosses or others in authority. (T. at 125.)

The ALJ also considered the four broad areas of functioning specified in the regulations for determining the severity of a mental impairment. *Id.* at 16; *see also* 20 C.F.R. §§404.1520a, 416.920a. The four areas are: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§404.1520a(b)(3), 416.920a(b)(3). The ALJ determined that Plaintiff had no limitations in performing the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, as well as no episodes of decompensation. *Id.* at 16.

In this regard, Plaintiff told his medical sources and acknowledged on his disability

application that he independently performed his activities of daily living. *Id.* at 119-26, 210, 212. Plaintiff also acknowledged on his disability application that he socialized and had no problems getting along with family and friends. *Id.* at 124. He told Dr. Noia that he got along well with family and friends. *Id.* at 210. As to Plaintiff's concentration, persistence, or pace, Dr. Noia observed that Plaintiff's attention and concentration skills were intact. *Id.* As mentioned, Plaintiff stated on his disability application that he had no difficulty paying attention, finishing what he started, and/or following instructions. *Id.* at 125. Plaintiff told Dr. Ganesh that he spent his days completing paperwork for public assistance and unemployment insurance benefits as well as watching television and reading. *Id.* at 212. Plaintiff did not allege nor does the evidence of record demonstrate any episodes of decompensation.

Generally, if a claimant's degree of limitation in each of the four broad areas of functioning is "none," then the claimant's mental impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Based upon the above outline of the evidence, Plaintiff failed to demonstrate a severe mental impairment.

Thus, the ALJ correctly found that Plaintiff's physical and mental health conditions including lumbar strain, controlled hypertension and unspecified alcohol dependence were not severe. *See* T. at 13. Nothing in the record indicates that Plaintiff's alleged physical and mental conditions significantly limited his physical or mental ability to do basic work activities. The ALJ's findings are supported by substantial evidence.

### D.  The ALJ Properly Determined Plaintiff's Credibility

The ALJ considered Plaintiff's testimony and alleged functional limitations as well as the extent to which such allegations could be reasonably accepted as consistent with the

objective evidence of record. *Id.* at 14-15; *see also* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. After carefully reviewing all of the evidence, the Court finds that the ALJ properly determined that Plaintiff's allegations regarding his functional limitations were not entirely credible. *Id.* at 15.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5, 1998 U.S. Dist. LEXIS 2751, at *2 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be

expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff gave inconsistent statements regarding the reasons he stopped working and his

inability to work, as well as his illegal drug use and criminal history.  For instance, Plaintiff testified that he quit his last job in October 2008 due to lower back pain.  (T. at 26).  Plaintiff, however, admitted to Dr. Ganesh and Dr. Noia that he stopped working due to transportation problems.  *Id.* at 208, 212.  On his disability application, Plaintiff alleged disability as of October 2008 due to arthritic hands and knees, a back condition, and breathing difficulties.  *Id.* at 112.  Plaintiff also testified that he was unable to work due to occasional nervous breakdowns.  *Id.* at 27.  Plaintiff, however, acknowledged that after he quit his last job he received unemployment insurance benefits until they elapsed.  *Id.* at 29.  Plaintiff's receipt of unemployment insurance benefits is inconsistent with his allegation of disability because to be eligible for unemployment insurance benefits, a claimant must state that he is able and available to work.  *See* NY Labor Law § 527 (McKinney's Supp. 2005) (an unemployed individual shall be eligible to receive unemployment benefits only if he is able to work and is available for work).  Also, Plaintiff told a physician at SJHHC that he never used drugs, but the physician noted that Plaintiff's records indicated that he regularly smoked marijuana and his criminal history included a felony conviction for possession of crack cocaine with intent to sell and numerous DUIs.  *Id.* at 258.

When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists.  20 C.F.R. §§ 404.1529(c), 416.929(c).  If Plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective evidence alone, the ALJ shall give consideration to other factors, such as Plaintiff's daily activities.  *Id.* Here, the objective medical evidence of record does not support Plaintiff's allegedly disabling functional limitations.

For example, x-rays of Plaintiff's lumbar spine were negative.  *Id.* at 201.  X-rays

of his right hand revealed no fracture, a normal alignment, and no foreign body. *Id.* at 241-242. Chest x-rays were unremarkable and revealed clear lungs with a normal silhouette and no effusions. *Id.* at 245.

Since Plaintiff's symptoms suggested a greater restriction than demonstrated by the objective evidence of record, the ALJ considered Plaintiff's activities of daily living. *Id.* at 14-15, 16, 119-126; 20 C.F.R. §§ 404.1529(c), 416.929(c). In this regard, Plaintiff stated that he helped take care of his mother and his six kids. *Id.* at 120. He took care of his own personal hygiene and grooming needs; prepared meals; housecleaned; did household repairs; read; watched television; went out for daily walks; drove a car; independently traveled by public transportation; attended medical appointments; shopped for gas and groceries; played sports; socialized with family and friends; and attended football games as well as the Boys & Girls Club. *Id.* at 119-24. Plaintiff testified that his hobbies included swimming. *Id.* at 39.

An ALJ may rely on a claimant's activities of daily living as substantial evidence in support of the ALJ's determination. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980) (such evidence that plaintiff is capable of engaging in many and varied activities despite allegations of severe pain is supportive of a conclusion that his alleged symptoms are not disabling).

Here, the evidence does not substantiate Plaintiff's allegations to the disabling extent he alleged. 20 C.F.R. §§ 404.1529(c), 416.929(c). Thus, the ALJ properly exercised his discretion and found that Plaintiff's allegations were not entirely credible. *Id.* at 15.

### E.     Plaintiff Was Not Prejudiced By His Lack Of Representation

Finally, the fact that Plaintiff appeared without representation at the hearing in no way

prejudiced him. Although a claimant is entitled to be represented by an attorney at an administrative hearing, the Commissioner is not obligated to provide the claimant with an attorney. *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980). Rather, the Commissioner should ensure that the claimant is aware of the right to counsel. *Robinson v. Secretary of Health and Human Services*, 733 F.2d 255, 257 (2d Cir. 1984). Here, the Commissioner sent Plaintiff an acknowledgment letter explaining the hearing process and advising him of his right to representation, as well as the availability of free legal services and private attorneys to assist him. (T. at 63-70.) At the hearing, the ALJ again advised Plaintiff of his right to be represented and confirmed that he received notification from the Commissioner explaining his right to representation. *Id.* at 23-24. Nonetheless, Plaintiff indicated that he wished to proceed without a representative. *Id.* The ALJ then diligently assisted Plaintiff by questioning him in detail about the nature of his disability and its effect on his ability to function. *Id.* at 24-43.

Further, the fully developed administrative record contained evidence from Plaintiff's treating sources. *Id.* at 195-207, 240-242, 245, 252-263. The record also contained reports from Plaintiff's examining physicians, physical and mental consultative assessments, and an assessment from a State agency psychological consultant. *Id.* at 170-230, 238-263. The ALJ also obtained further treating providers' records after the hearing. *Id.* at 42-43.

Consequently, Plaintiff was granted a full and fair hearing, since the ALJ fulfilled his affirmative duty to assist the unrepresented Plaintiff in developing the medical record. *Cruz v. Sullivan*, 912 F.2d 8 (2d Cir. 1990).

**VII.    CONCLUSION**

After carefully reviewing the entire record and for the reasons stated, Plaintiff failed to

demonstrate a severe impairment, and the ALJ properly determined that Plaintiff was not disabled.

**WHEREFORE,** it is hereby

**ORDERED**, that the Commissioner's decision is affirmed and Defendant's motion for judgment on the pleadings is **GRANTED** and the complaint (Dkt. No. 1) is **DISMISSED.**

Dated: March 26, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge